UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Brian C. Patten,
        Plaintiff

        v.                              Case No. 21-cv-0849-SM
                                        Opinion No. 2022 DNH 054
AVDG, LLC,
        Defendant


**O R D E R**


    Plaintiff Brian Patten filed suit against his former
employer, AVDG, LLC, asserting federal and state claims.
Defendant has moved to compel arbitration of those claims, and
to stay this litigation.  Patten objects.


**STANDARD OF REVIEW**

    Our Court of Appeals has not yet identified the proper
standard of review when considering a motion to compel
arbitration.  See Baker v. Montrone, 2020 DNH 006, 2020 WL
128531, at *1 (D.N.H. Jan. 10, 2020); see also Landry v. Time
Warner Cable, Inc., No. 16-CV-507-SM, 2017 WL 3431959, at *1
(D.N.H. Aug. 9, 2017).  Nevertheless, when the parties rely on
affidavits and exhibits, judges in this district tend to resolve
the motion applying the summary judgment standard.  See, e.g.,
Rosen v. Genesis Healthcare, LLC, No. 20-CV-1059-PB, 2021 WL
411540, at *2 (D.N.H. Feb. 5, 2021); see also Daschbach v.

_Advanced Mktg. & Processing, Inc._, No. 20-CV-0706-JL, 2021 WL
1163010, at *2 (D.N.H. Mar. 26, 2021) ("The First Circuit Court
of Appeals has not announced the standard of review for a motion
to compel arbitration, but district courts within this circuit
apply the summary judgment standard.") (citations omitted).

Applying that standard, the court reviews the record in the
light most favorable to Patten, and draws all reasonable
inferences in his favor.  See _Block Island Fishing, Inc. v._
_Rogers_, 844 F.3d 358, 360 (1st Cir. 2016) (citation omitted).
AVDG is entitled to compel arbitration only if the record
reveals "no genuine dispute as to any material fact" and
judgment follows as a matter of law.  See Fed. R. Civ. P. 56(a).
In this context, a factual dispute "is 'genuine' if the evidence
of record permits a rational factfinder to resolve it in favor
of either party, and 'material' if its existence or nonexistence
has the potential to change the outcome of the suit."  _Rando v._
_Leonard_, 826 F.3d 553, 556 (1st Cir. 2016) (citation omitted).

## BACKGROUND

When, as here, a motion to compel arbitration is made "in
connection with a motion to dismiss or stay," the court "draw[s]
the relevant facts from the operative complaint and the
documents submitted . . . in support of the motion to compel

2

arbitration." <u>Hogan v. SPAR Group, Inc.</u>, 914 F.3d 34, 36 (1st Cir. 2019) (quoting <u>Cullinane v. Uber Technologies, Inc.</u>, 893 F.3d 53, 56 (1st Cir. 2018)).  The material facts, construed in the light most favorable to Patten, are as follows.

Patten was hired by AVDG as a Purchasing Specialist on January 24, 2020.  The company emailed an offer letter to him that morning that set forth the terms of his employment.[1]  The offer letter stated:

> [Y]our employment is contingent upon acknowledgement and agreement of the Arbitration Program Agreement included with this offer, as well as acknowledgement and agreement with other onboarding documentation that you will receive following acceptance of this offer.
>
> Your electronic signature will indicate your acceptance of this offer and signature to the Arbitration Program Agreement.

Def.'s Mot. to Compel, Exh. 2.

The Arbitration Program Agreement, drafted on behalf of Guitar Center, Inc. "and its subsidiary employees," reads:

> To provide for more expedient resolution of disputes, we have instituted a mandatory arbitration procedure for all associates that are not otherwise covered by an agreement relating to the terms of employment (we call it the "Arbitration Program").  Under the Arbitration

---

[1]     The offer letter was sent on behalf of Guitar Center, Inc., of which AVGD, LLC, is a subsidiary.

      Program, covered disputes between you and the company
      must be submitted for resolution by mandatory
      arbitration after appropriate attempts have been made
      to resolve the dispute informally.

Def.'s Mot. to Compel, Exh. 3.  The agreement covers a variety

of disputes, including: those arising out of employment or

termination of employment; disputes alleging violations of wage

and hour laws or pay practices; disputes alleging violations of

federal law; and disputes concerning the application of the

arbitration agreement's terms.  Finally, the Agreement states:

"[t]his agreement and agreeing to submit to the Arbitration

Program is a condition of new or continued employment.  If you

accept or continue employment with the company, both you and the

company will be bound by its terms."  Id.

      After receiving defendant's email, Patten promptly logged

onto the company's Human Resources Information System.  He

accepted defendant's offer by submitting his electronic

signature at 9:48 a.m., on January 24, 2020.  Id., Exh. 1, p. 6.

Patten says he has "no recollection" of reviewing or signing the

Arbitration Program Agreement.  See Pl.'s Opp. to Mot. to

Compel, Exh. A, ¶2.

      Following the advent of the COVID-19 pandemic in early

2020, Patten and other AVDG employees attended a conference in

late March, 2020, at which AVDG human resources personnel

explained employee eligibility for leave under the federal
Families First Coronavirus Relief Act (FFCRA).  Soon after, on
April 2, 2020, Patten notified AVDG that he would need to take
FFCRA leave because, as a result of the pandemic, his daughter's
daycare was closing.  He informed AVDG that he would begin his
FFCRA leave on April 6.[2]

The following day, April 3, AVDG issued Patten a written
disciplinary warning, purportedly for poor performance.  Patten
then took FFCRA leave on April 6, as planned.  However, AVDG did
not compensate Patten while he was on leave.  And, approximately
13 days after Patten began his FFCRA leave, AVDG furloughed his
employment.  When Patten's FFCRA leave expired, AVDG did not
return him to his position, or to any equivalent position.

Patten subsequently brought this suit, asserting violations
of FFCRA and a common law wrongful termination claim.

**DISCUSSION**

Defendant says that the court should compel arbitration
because a valid agreement to arbitrate exists.  Patten objects,
arguing that AVDG has not met its burden of establishing that a

---

[2]   AVDG did not deny Patten's request for leave, or otherwise
inform him that his request for leave was deficient in any way.

valid agreement to arbitrate exists between the parties.  He
further argues that AVDG is not entitled to invoke the
agreement, since it is not specifically identified as a party to
the Arbitration Agreement.

The Federal Arbitration Act "establishes 'a liberal federal
policy favoring arbitration agreements.'"  Epic Sys. Corp. v.
Lewis, 138 S. Ct. 1612, 1621 (2018) (quoting Moses H. Cone
Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24
(1983)) (additional citations omitted).  Accordingly, the Act
"requires courts to enforce covered arbitration agreements
according to their terms."  Lamps Plus, Inc. v. Varela, 139 S.
Ct. 1407, 1412 (2019) (citations omitted).  "[T]he existence of
an enforceable agreement to arbitrate is the first needed step
to trigger the FAA's protective reach."  Rivera-Colón v. AT&T
Mobility Puerto Rico, Inc., 913 F.3d 200, 207 (1st Cir. 2019)
(internal citation omitted).  As the party seeking to compel
arbitration, AVDG "bears the burden of ... demonstrating that a
valid agreement to arbitrate exists."  Id. (quotation omitted).

Under the FAA, "principles of state contract law control
the [court's] determination of whether a valid agreement to
arbitrate exists."  Campbell v. General Dynamics Govt. Sys.
Corp., 407 F.3d 546, 552 (1st Cir. 2005).  Because arbitration
"is a matter of contract," "a party cannot be required to submit

to arbitration any dispute which [it] has not agreed so to
submit." Hogan v. SPAR Grp., Inc., 914 F.3d 34, 38 (1st Cir.
2019) (quoting McCarthy v. Azure, 22 F.3d 351, 354 (1st Cir.
1994)) (further quotations omitted).

Defendant contends that Patten plainly agreed to arbitrate
this dispute when he accepted AVDG's job offer on June 24, 2020,
by submitting his electronic signature.  Defendant's electronic
database requires a unique password, "known only to the
individual and no one other than the individual has access to
the employee or applicant's password," and therefore no one else
is likely to have submitted Patten's electronic signature.
Def.'s Mem. in Supp. of Mot. to Compel at 4.  AVGD also relies
on the following language in the Arbitration Agreement, which
states, in all capitalized letters:

> By electronically signing this agreement, you are
> agreeing to this agreement, and affirming that you
> have knowingly and freely entered into this Agreement,
> have had sufficient time to read and understand its
> terms and have been provided sufficient opportunity to
> seek legal counsel regarding the meaning and effect of
> this agreement prior to accepting its terms.

See Def.'s Mot. to Compel, Exh. 3.  Finally, AVDG contends that
the Arbitration Agreement provided Patten with adequate
consideration for signing, including continued employment, the
parties' mutual agreement to arbitration of disputes, and the

defendant's agreement to cover all case management and administrative fees, as well as the arbitrator's fees and expenses.

Unsurprisingly, Patten disagrees.  Patten does not dispute that his claims fall within the scope of the arbitration agreement, or that adequate consideration exists.  Instead, he argues that defendant has not sufficiently established the existence of a valid agreement to arbitrate.  Patten points out that, as the party seeking to compel arbitration, AVDG bears the burden of demonstrating the existence of a valid, enforceable agreement to arbitrate.  He says that AVDG fails to meet its burden because it has not proffered "any signatures from any alleged signatories" to the Arbitration Agreement.  Def.'s Mem. in Opp. to Mot. to Compel at 4.  Patten says that an "unsigned agreement . . . cannot suffice to meet the defendant's burden of proof."  Id.

The offer letter (which Patten does not deny signing) makes explicit that Patten's employment with AVDG was contingent upon acknowledgement of, and agreement to, the Arbitration Program Agreement attached to the letter.  The offer letter also provides that Patten's electronic signature would serve to confirm Patten's acceptance of both the offer and the Arbitration Agreement.  And, as previously mentioned, that

Agreement states: "This agreement and agreeing to submit to the Arbitration Program is a condition of new or continued employment.  If you accept or continue employment with the company, both you and the company will be bound by its terms." Id., Exh. 3.  In other words, Patten submitted to the Arbitration Agreement and its terms as a condition of accepting and continuing employment by defendant.

Patten unarguably accepted the offer of employment.  AVDG has submitted evidence demonstrating that, after receiving defendant's offer, Patten accessed the company's Human Resources Information System, and submitted his electronic signature, at 9:48 a.m., thereby accepting the offer and its terms of employment (including his agreement to submit to the Arbitration Program).  See Def.'s Mot. to Compel, Exh. 1, p. 6.  While Patten makes several valid points about the paucity of defendant's evidentiary submission, he does not dispute that he accepted AVDG's offer of employment in January, 2020, or that he began working for the company shortly thereafter, thereby accepting the terms of the offer letter and Arbitration Agreement by performance.

That Patten does not currently recollect reviewing the Arbitration Program Agreement does not undermine the properly supported facts that AVDG has presented.  See, e.g., GT Solar

9

Inc. v. Goi, No. 08-CV-249-JL, 2009 WL 3417587, at *9 (D.N.H.
Oct. 16, 2009) ("It is well established that a claimed lack of
memory is insufficient to rebut uncontroverted evidence to the
contrary.") (citing Ayer v. U.S., 902 F.2d 1038, 1045 (1st Cir.
1990)).  See also Haag v. U.S., 485 F.3d 1, 3 (1st Cir. 2007) (a
purported lack of memory about a fact is not affirmative
evidence that the event did not occur and, therefore, it is
insufficient to render that fact "genuinely disputed").

        Patten also argues that AVDG is not entitled to invoke the
arbitration clause because it is not specifically identified as
a party to the Agreement Program Agreement.  He points out that
the only named party to the Agreement is Guitar Center, Inc.,
which was not Patten's employer, and is not a named party in
this action.

        The record evidence does not support Patten's view.  The
Arbitration Agreement does not mention AVDG by name (although
AVDG's logo does appear in the footer of the agreement).
However, the first sentence of the Arbitration Agreement
includes Guitar Center, Inc.'s "subsidiary employers" as parties
to the agreement.  Def.'s Mot. to Compel, Exh. 3, p. 1
("Although we (meaning Guitar Center, Inc. and its subsidiary
employers) hope that disputes with associates will not occur, we
believe that when disputes arise, it is in our mutual best

interests to handle them promptly and with a minimum of
disturbance to the lives of the impacted associates or our
operations.") (emphasis added).  The Agreement also defines "the
company" as "including its subsidiaries."  Id. ("all disputes
between you and the company (including its subsidiaries, owners,
officers, directors, employees, agents or successors) will be
resolved exclusively by final and binding arbitration, and not
by court or other action.").

Although for reasons that might be apparent, I think the
dissent had the better view, still, since Bosse v. N.Y. Life
Ins. Co., 992 F.3d 20 (1st Cir. 2021) (Barron, J., dissenting),
in this circuit, avoiding arbitration is highly unlikely in the
face of even ambiguous contractual clauses, and far more remote
and unconnected circumstances than are presented here.  Parties
can expect that arguable obligations will routinely be referred
to arbitrators to decide arbitrability, including, initially,
whether the parties entered into a valid contractual agreement
to arbitrate a particular dispute.

**CONCLUSION**

For the foregoing reasons, as well as those in defendant's
briefing, AVDG has sufficiently shown the existence of a valid
agreement to arbitrate, and that it is entitled to invoke the
agreement.  Defendant's motion to compel arbitration, and stay

these proceedings under the Federal Arbitration Act, 9 U.S.C.

§ 1 (document no. 8) is necessarily **GRANTED**.

      **SO ORDERED.**

                                        _____
                                        Steven J. McAuliffe
                                        United States District Judge

April 12, 2022

cc:  All counsel of record